IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICKEY SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 04cv1804 |
| | ) | |
| R. JAMES NICHOLSON, | ) | |
| Secretary of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

February 5, 2007

    Presently before the Court is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant R. James Nicholson, Secretary of Veterans Affairs *(Document Nos. 28 and 29)*, the BRIEF IN OPPOSITION filed by Plaintiff, Rickey Sanders (*Document No. 37*), the REPLY BRIEF filed by Defendant (*Document No. 44),* and the SUR REPLY TO DEFENDANT'S REPLY BRIEF filed by Plaintiff (*Document No. 48*).

    The issues have been fully briefed and the matter is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Rickey Sanders, on his claims of retaliation. Therefore, the Court will grant the Defendant's motion for summary judgment in its entirety.

**PROCEDURAL BACKGROUND**

    Plaintiff, Rickey Sanders ("Plaintiff") brought this lawsuit on November 24, 2004, by the filing of Complaint against his former employer, R. James Nicholson, Secretary of the

Department of Veterans Affairs ("Defendant") in which he alleged that the Department of Veterans Affairs, Pittsburgh Healthcare System ("VA") discriminated against him on the basis of his race and religion and retaliated against him for complaining about such discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., when it "refused to hire, promote, and/or retain him for open positions in the Textile Care Section" at the VA."[1]  *Complaint, at ¶ 1.*

Plaintiff broadly claims that he applied for certain "full-time, part-time and/or temporary laundry worker positions in September, October, and December of 2001, and again in March 2002," and that those positions were awarded to less-qualified individuals who were not in Plaintiff's protected class(es).  *Complaint, at ¶ 1.*

Plaintiff now concedes, however, that only two claims are properly before the Court:

> Mr. Sanders' claim in the instant case is that, on account of his protected activity, he was retaliated against by the Veterans Administration by failing to extend his temporary appointment in October 2001, and retaliated against when he was not selected for the position announced in December 2001.

*Pl's Reply to Def's Statement of Material Facts.*

---

[1] Plaintiff apparently has withdrawn his claim of race and religious discrimination relating to his non-selection for the permanent laundry worker position in July 2001.  Specifically, Plaintiff has confirmed that he

> does not contend in this case that the failure to select him for the position announced in "Vacancy Announcement' (No. 2001-45 OA) . . . was in retaliation for protected activity on Mr. Sanders' part.  Likewise, Mr. Sanders does not contend in this [lawsuit] that his non-selection for that position was on account of his race or religion.

*Pl's Reply to Defendant's Statement of Material Facts at 1.*

Defendant has filed the instant motion for summary judgment in which it contends that Plaintiff is unable to establish a *prima facie* case of retaliation under Title VII.  In the alternative, Defendant contends that assuming *arguendo* that Plaintiff could state a *prima facie* case of retaliation under Title VII, summary judgment should still be granted in its favor because there is no evidence that Defendant's articulated legitimate, non-retaliatory reason for (i) failing to extend his temporary appointment in October 2001 and/or (ii) failing to select him for the permanent part-time position announced in December 2001 was false or that Plaintiff's protected activity was the real reason for Defendant's decisions.

### BACKGROUND

As the law requires, all disputed facts and inferences are resolved most favorable to the Plaintiff.   On or about September 21, 2000, Plaintiff submitted an application for employment to the VA, in an effort to obtain a position as a temporary part-time laundry worker.  The written application included the following question:

> During the last ten years, have you been convicted, been imprisoned, been on probation or been on parole? (includes felonies, firearms or explosives violations, misdemeanors and all other offenses.)  If yes, use Item No. 15 to provide the date, explanation of the violation, place of occurrence and the name and address of the police department or court involved.

In response to this question, Plaintiff checked the box marked "yes," and used the space under Item No. 15 to explain his past criminal violations.  Specifically Plaintiff wrote: "To whom it may concern, in 1996, I was convicted for possession of drug substance.  I served 11-1/2 months of house arrest and [was] placed on probation.  I was charged with this crime but never tried in court because I pleaded guilty for various reasons."

3

In October, 2000, Plaintiff was hired as a part-time temporary laundry worker at the Veteran's Administration Pittsburgh Health Care System. His effective date of appointment was October 22, 2000, with an anticipated expiration date of October 21, 2001. At the time of his hire, Plaintiff understood that his temporary appointment did not entitle him to be automatically converted to a permanent position.

From October 2000 through June 2001, Plaintiff performed all required duties of the "laundry worker" position, frequently performing additional duties, filling in for absent workers, and working many unscheduled overtime hours and holidays.

The VA is required to have a background investigation conducted on new hires, including temporary employees who are hired for more than ninety days. Accordingly, the VA requested the United States Office of Personnel Management to conduct a background investigation of Plaintiff. According to Plaintiff, in the Summer of 2001, employment "suitability" issues arose as a result of the background investigation. The background investigation revealed four criminal charges that Plaintiff had not listed on his job application and the VA needed to know what the resolution of those charges had been.

The summary judgment record reflects that on June 4, 2001, Plaintiff was provided a letter from the VA which stated that the results of his background investigation "raise[d] a serious question as to [Plaintiff's] current suitability for competitive federal employment." The letter further explained that the investigative information could be a basis for the VA to find Plaintiff unsuitable for federal employment, and gave Plaintiff the opportunity "to make any comments or explanation you wish in the space provided after each charge," and to "provide any documentary evidence, including affidavits, to support your comments." Plaintiff

understood that if he did not provide the VA with additional information about the criminal charges he might be deemed to be unsuitable for federal employment.

In June 2001, the VA issued a Vacancy Announcement 2001-45OA, regarding the availability of "five (5) laundry workers, WG-730401 permanent part time" positions with an opening date for applications of June 11, 2001, and a closing date of June 22, 2001. Initially, on July 9, 2001, Plaintiff was selected to fill this vacancy. However, on July 19, 2001, Paul Battisti, the Assistant Personnel Officer, instructed William Glass, Plaintiff's supervisor in the laundry facility, to select another candidate in place of Plaintiff due to the status of Plaintiff's pending suitability determination. The VA Handbook expressly provides that "if there is any question about an applicant's suitability, no appointment action will be taken, nor will an employment commitment be made until the matter has been resolved." (*See VA Handbook 5005 Part Two, Chapter 1, Section 3b*.) The selection certificate for Vacancy Announcement 2001-45OA contains an asterisk by Plaintiff's name, which reflects that "Sanders not selected due to suitability issue concerning background investigation per Paul Battisti."

By letter dated July 17, 2001, Plaintiff's criminal defense lawyer provided the VA with information regarding the resolution of the criminal charges that the VA had requested information about.[2] By letter dated July 26, 2001, William Mills, Human Resources Manager, notified Plaintiff of a favorable decision regarding his suitability for federal employment. The next day, however, on July 27, 2001, Plaintiff was informed that he had not been selected for the available laundry worker position, i.e., Vacancy Announcement 2001-45OA.

---

[2]  Defendant was advised that Plaintiff received probation for "the September 24, 1994 and January 28, 1998 incidents" and the "September 19, 1995 and the July 8, 1997 incidents were dismissed."

On August 1, 2001, Plaintiff contacted the Office of Resolution Management via the 888-telephone line and alleged that his non-selection for the laundry worker's position was based on his race and/or his religion. On September 10, 2001, Plaintiff filed a Complaint of Employment Discrimination in which he stated:

> I SPOKE UP ABOUT BEING HIRED FULL-TIME (FROM A TEMP POSITION) AFTER WORKING 10 MONTHS AS A TEMPORARY LAUDRY (SIC) WORKER. THERE WERE 5 <u>PERMANENT</u> PART-TIME SLOTS OPEN. WE WERE SHORT STAFFED AND ALSO TOOK ON ANOTHER CONTRACT. I SPOKE TO MY SUPERVISOR WHO HAD PREVIOUSLY STATED WE WERE TO GET 6 NEW WORKERS SINCE 5 HAD PREVIOUSLY QUIT. I ALSO SPOKE TO THE UNION, WHO WERE ALREADY AWARE OF THE SITUATION IN THE LAUDRY (SIC). THEY WERE TRYING TO GET THE TEMP. WORKERS HIRED AS FULL-TIME PERMANENT. FIVE POSITIONS BECAME POSTED AND I WAS TOLD BY MY SUPERVISOR THAT I WAS SELECTED. TWO WEEKS LATER I WAS TOLD BY PERSONEL (SIC) THAT I WAS UNSUITABLE AND GIVEN 2 WKS. TO PROVE OTHERWISE. I PROVED SUITABILITY WITHIN 3-4 DAYS YET THE DISCUSSION WAS MADE TO HIRE 4 PART-TIME & 1 PERSON FROM OUTSIDE PRIOR TO MY DEADLINE.

*Complaint of Employment Discrimination, Claim 200H 0646-200104205.*

On October 22, 2001, Plaintiff's employment as a part-time temporary laundry worker position expired.

On December 20, 2001, the VA announced the availability of "One (1) laundry worker WG-73014-1 Permanent Part-time", with an opening date for filing applications on December 20, 2001 and a closing date for such applications on December 27, 2001 (Vacancy Announcement 2001-103OA). On December 24, 2001, Plaintiff filed a timely application for the announced position.

On January 16, 2002, Plaintiff filed a second Complaint of Employment Discrimination in which he alleged that the termination of his temporary assignment was the result of "reprisal":

> Prior to this complaint of reprisal, I had a EEO complaint of descrimination (sic) due to race and religion. This stemmed from my non-selection of a laudry (sic) worker position due to unsuitability. After disproving these findings, I was still not placed in one of the positions available after being assured that my slot would be held open. After this incident occurred in June 2001, I was assured that a position would be made for me to compensate for the error made. This never materialized and I was never treated in the same manner again prior to initiating the complaint. October 21, 2001, I called to request off due to a home emergency. The supervisor informed me that this would be considered annual leave. He then altered this decision and told me to come in and clean on Monday. After being unjustly denied a position that I was already occupying as a temporary worker, then promised a position to replace the one lost, I can only come to the conclusion that being terminated was in reprisal for standing up for what I believe. I have also applied for two positions which I have heard nothing (temp. food service & permanent p/t laundry worker).

*Complaint of Employment Discrimination, Claim No. 200H-200R-0645-200210110.*

On March 13, 2002, Plaintiff was informed that he had not been selected for the permanent part-time laundry position (vacancy announcement 2001-103OA) . Thereafter, Plaintiff amended his EEO Complaint to also include a claim of discrimination against him "on the basis of reprisal for prior EEO activity with regard to non-selection when: On March 13, 2002, he was informed, via letter, that he was not selected for the position of Laundry Worker under vacancy announcement number 2001-103 OA."

On November 24, 2004, Plaintiff filed the instant lawsuit in which he alleges that after he engaged in protected activity, the VA wrongfully retaliated against him by (i) failing to

extend his temporary appointment in October 2001, and (ii) failing to select him for the permanent part-time position announced in December 2001.

Defendant has filed the instant motion for summary judgment in which it contends that Plaintiff is unable to establish a *prima facie* case of retaliation under Title VII. In the alternative, Defendant contends, assuming *arguendo,* that Plaintiff could establish a *prima facie* case of retaliation, summary judgment should still be granted in its favor because Defendant had a legitimate non-retaliatory reason for (i) terminating Plaintiff's temporary part-time employment in October 2001 and/or (ii) not selecting Plaintiff for the permanent part-time position announced in December 2001.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the

summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

With respect to summary judgment in discrimination cases, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987). The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal retaliatory purpose *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 525, 27 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993).

## DISCUSSION

Title VII provides, in pertinent part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*42 U.S.C. § 2000e-3(a).* To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (i) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006). Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee

must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. *Id.* at 341.

Plaintiff's claims of retaliation will be addressed seriatim.

A.    <u>Termination of Plaintiff's Temporary Assignment</u>

Plaintiff contends that Defendant retaliated against him for engaging in protected activity when it failed to extend his temporary appointment in October 2001. However, the Court finds and rules that this contention is without merit.

Although Plaintiff engaged in protected activity, the Court finds that Plaintiff did not suffer an adverse employment action and, thus, cannot establish the second requirement of his *prima facie* case. The express terms and conditions of Plaintiff's employment with the VA were that he was hired for a one year, temporary position, with an anticipated expiration date of October 21, 2001. Plaintiff acknowledges that he knew that the appointment would not exceed the date of October 21, 2001, and that he could be terminated at any time without the use of adverse action or reduction in force procedures. Plaintiff also acknowledges that he knew that his temporary appointment did not entitle him to automatic conversion to a permanent position. (*See Ex. A 54: 13-16; 55: 2-5; 56:21-25; 58:12-15*).

Plaintiff's termination clearly resulted from the automatic expiration of his temporary appointment. The Court finds and rules that termination under this circumstance is simply not the equivalent of an adverse employment action. Plaintiff's termination resulted from the durational limits of his temporary appointment, which appointment by its terms, expired on October 21, 2001. *See Forkkio v. Tanoue*, 131 F. Supp. 36, 42 (D.D.C. 2001) (where plaintiff

had been temporarily promoted to section chief position, reversion back to former position upon expiration of temporary position did not constitute "adverse action" because plaintiff did not lose a term or condition of employment to which he had anything but a temporary entitlement"); *aff'd,* 306 F.3d 1127 (D.C. Cir. 2002); *Werner v. United States*, 590 F.2d 344 (Ct. Cl. 1978) (unpublished opinion) (expiration of "appointments not to exceed" stated date did not constitute "adverse action" because plaintiff was "separated because his . . . appointment expired . . . termination was not an adverse action but merely part of the original condition of his employment.").

The only allegation that Plaintiff makes in an attempt to defeat summary judgment on this claim is an unsupported, conclusory assertion that Paul Battisti and William Glass agreed to extend his employment upon the expiration of his initial temporary assignment. *(See Sanders Affidavit / transcript at 18, 19, 40, Ex. 7.)* Aside from his own unsubstantiated assertion, Plaintiff has cited no evidence in support of his claim that it was agreed upon that his temporary employment would be extended upon the expiration of his initial temporary assignment. A plaintiff cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *See Williams v. Borough of Westchester*, 891 F.2d 458, 460 (3d Cir. 1989).

Accordingly, the Court finds and rules that Plaintiff is unable to establish a *prima facie case* of retaliation and Defendant is entitled to summary judgment on Plaintiff's claim that he was retaliated against him for engaging in protected activity when Defendant failed to extend his temporary appointment in October 2001.

B.        Non-Selection of Plaintiff for The Permanent Part-Time Position in December 2001

For the purpose of this decision, the Court will assume that Plaintiff has met his *prima facie* case of retaliation. Therefore, the burden shifts to Defendant to articulate some legitimate, non-retaliatory reason for its decision. Succinctly, Defendant simply argues that Plaintiff was not the best qualified applicant.

Initially, Defendant selected Samuel Van Pelt ("Van Pelt") for the position, although he declined it. Van Pelt had both a Bachelor of Arts degree and a Masters degree, as well as prior experience working at a VA Medical Center. Van Pelt's resume reflected his more than thirteen years of continuous work experience. (*See Ex. X, Application of Samuel Van Pelt.*)

After Van Pelt declined the position, Defendant offered the position to Alan White ("White"). White possessed a college degree and had fifteen years of experience as a federal employee of the VA Healthcare system, including supervisory roles.

In contrast, Plaintiff's application and resume reflected only 3 years and 4 months of total work experience.

Because Defendant has articulated a legitimate, non-retaliatory reason for not selecting Plaintiff, the onus shifts back to Plaintiff to show, by a preponderance of the evidence, that Defendant's stated explanation is pretextual. *Fuentes*, 32 F.3d at 763. In order to discredit Defendant's articulated reason, Plaintiff need not produce evidence that necessarily leads to the conclusion that his former employer acted for a retaliatory reason. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination"). Plaintiff may survive summary judgment by submitting evidence from which

12

a factfinder could reasonably either: (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

While Plaintiff baldly alleges that Defendant's actions were pretextual, the Court finds that the record is completely devoid of any evidence of pretext.  After careful review of the record, this Court concludes that Plaintiff has presented no evidence to create a genuine issue of material fact regarding the credibility of Defendant's legitimate non-retaliatory reason for not selecting Plaintiff for the permanent, part time position.

For all the foregoing reasons, the Court finds that Defendant is entitled to summary judgment because Plaintiff has not produced adequate evidence from which a reasonable factfinder could conclude that Defendant's legitimate, non-retaliatory business reason for not selecting Plaintiff was a pretext or that its real motivation was a retaliatory animus based on Plaintiff engaging in protected activity.

### Conclusion

Viewing the facts in the light most favorable to Plaintiff, the Court finds that (i) Plaintiff has failed to present a *prima facie* case of retaliation on his claim that his temporary assignment was not extended and (ii) that he has presented no evidence to create a genuine issue of material fact regarding the credibility of Defendant's legitimate non-retaliatory reason not selecting Plaintiff for the permanent part-time position which was announced in December

2001. Accordingly, summary judgment will be granted in its entirety as to Plaintiff's claims of retaliation.

       An appropriate Order follows.

                                                        McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKEY SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02: 04cv1804 |
| ) | |
| R. JAMES NICHOLSON, ) | |
| Secretary of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

AND NOW, this 5th day of February, 2007, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion for Summary Judgment filed by Defendant is **GRANTED** in its entirety and judgment is hereby entered in favor of Defendant, R. James Nicholson, Secretary of Veterans Affairs.

The clerk is ordered to docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:   Timothy P. O'Brien, Esquire
      Email: tpob@icubed.com

      Christy C. Wiegand,
      Assistant U.S. Attorney
      Email: christy.wiegand@usdoj.gov